**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| BILLY RAY JONES, | § | |
| (TDCJ-CID #1925745) | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-16-3761 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM AND OPINION**

Petitioner, Billy Ray Jones, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging a conviction in the 174th Judicial District Court of Harris County, Texas. Respondent filed a motion for summary judgment, (Docket Entry No. 12), and copies of the state court record. Jones has filed his response. (Docket Entry No. 14). After consideration of the motion and response, the record, and applicable authorities, the court grants respondent's motion. The reasons for this ruling are stated below.

**I. Background**

A jury found Jones guilty of the felony offense of possessing with intent to deliver the controlled substance phencyclidine ("PCP"), weighing more than 200 grams and less than 400 grams, and using or exhibiting a deadly weapon. (Cause Number 139777301010). Jones pleaded true to the enhancement paragraph relating to a prior conviction in Cause Number 94987. On April 24, 2014, the court sentenced Jones to eighteen years imprisonment. The First Court of Appeals of

Texas affirmed Jones's conviction as modified on July 30, 2015. The appellate court modified the judgment to strike the special finding or order of "APPEAL WAIVED. NO PERMISSION TO APPEAL GRANTED." The appellate court further modified the judgment to strike the "TRUE" finding to the headings of "Plea to 2nd Enhancement/Habitual Paragraph" and "Findings on 2nd Enhancement/Habitual Paragraph." Jones did not file a petition for discretionary review in the Texas Court of Criminal Appeals.

Jones filed his first application for state habeas corpus relief on September 9, 2015, and the Texas Court of Criminal Appeals dismissed it on December 23, 2015, because his direct appeal was pending. (Docket Entry No. 13-12, p. 1). Jones filed a second application for state habeas corpus relief on April 17, 2016, which the Texas Court of Criminal Appeals denied without written order, on findings of the trial court, without a hearing on September 21, 2016. (Docket Entry No. 13-14, p. 1).

On December 21, 2016, this court received Jones's federal petition. Jones contends that his conviction is void for the following reasons:

(1)     the search of Jones's vehicle violated the Fourth Amendment because the police officer failed to produce a search warrant prior to searching Jones's vehicle;

(2)     trial counsel, Tommy L. LaFon, rendered ineffective assistance by failing to hire an expert witness;

(3)     Jones's right to equal protection was violated, where "Petitioner was discriminated against because of his economic status," namely that "Petitioner could not hire a good attorney because of his poverty;"

(4)     Jones's due process rights were violated "due to invalid indictment and failure to prove allegations;" and

(5)     the trial court abused its discretion by:

     a.     failing to apply the law to the facts; and

     b.     allowing the State expert witness to give expert opinion without a proper predicate.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 6-7).

## II.    The Applicable Legal Standards

This court reviews Jones's petition for writ of habeas corpus under the federal habeas statutes, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254; *Woods v. Cockrell*, 307 F.3d 353, 356 (5th Cir. 2002); *Nobles v. Johnson*, 127 F.3d 409, 413 (5th Cir. 1997), citing *Lindh v. Murphy*, 521 U.S. 320 (1997).

Sections 2254(d)(1) and (2) of the AEDPA set out the standards of review for questions of fact, questions of law, and mixed questions of fact and law that result in an adjudication on the merits. An adjudication on the merits "is a term of art that refers to whether a court's disposition of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000). A state-court determination of questions of law and mixed questions of law and fact is reviewed under 28 U.S.C. § 2254(d)(1) and receives deference unless it "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state court confronts facts that are

materially indistinguishable from a relevant Supreme Court precedent" and arrives at an opposite result. *Williams v. Taylor*, 120 S. Ct. 1495 (2000). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 1495. Questions of fact found by the state court are "presumed to be correct . . . and [receive] deference . . . unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

A state court's factual findings are entitled to deference on federal habeas corpus review and are presumed correct under section 2254(e)(1) unless the petitioner rebuts those findings with "clear and convincing evidence." *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006) (citing *Hughes v. Dretke*, 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This deference extends not only to express findings of fact, but to the implicit findings of the state court as well. *Garcia*, 454 F.3d at 444-45 (citing *Summers v. Dretke*, 431 F.3d 861, 876 (5th Cir. 2005); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir.), *cert. denied*, 531 U.S. 831 (2000), the rule applies only to the extent that it does not conflict with the habeas rules. Section 2254(e)(1) – which mandates that findings of fact made by a state court are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable

O:\RAO\VDG\2016\16-3761.d01.wpd

to the nonmoving party. Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

Jones is proceeding *pro se*. A *pro se* habeas petition is construed liberally and not held to the same stringent and rigorous standards as pleadings filed by lawyers. *See Martin v. Maxey*, 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti*, 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court broadly interprets Jones's state and federal habeas petitions. *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999).

## III. Statement of Facts

The appellate court summarized the evidence at trial as follows:

Houston Police Department ("HPD") Officer C.T. Harrington testified that around 9:00 p.m. on August 12, 2003, he and his partner, Officer Zink, were patrolling an area of southeast Houston known for high narcotics activity. As they drove by an apartment complex known for PCP activity, Harrington noticed a Chevrolet Avalanche truck, with its running lights on, backed into a parking space. Based on his training and experience, Harrington was concerned that a crime was possibly in progress. He explained that the manner in which the truck was parked indicated that "someone's in the [truck] with a quick way to leave the apartment complex ... or they're waiting on someone to return back to the [truck]." Harrington parked his patrol car so that he could observe the truck and initiate a traffic stop after it left the complex, if he witnessed a traffic violation. Once the truck left the complex, he observed that it failed to make a complete stop at a stop sign. Harrington followed the truck for a short time before he activated his emergency lights and siren. Rather than stop his truck immediately, appellant, who was the driver, traveled approximately two-tenths of a mile, passing several places safe to stop, before he pulled over into a parking lot. Harrington then used a spotlight, which enabled him to see that the truck had three occupants—two in the front and one in the back. He noted that all of the occupants were making "very fast movements as if they were trying to gather something or stuff something down." Harrington specifically saw appellant making "furtive movements with his hands," while his head was engaged in "a ducking motion to immediately put something under the seat." Based on his training and experience, Harrington believed that "someone [was] hiding something

that they had on their person or in the [truck], or someone [was] possibly reaching for a weapon that [was] stashed under the seat."

After Officers Harrington and Zink exited their patrol car, they asked the occupants of the truck to put their hands outside of the windows. Despite the request, the occupants continued to make continuous movements inside the truck, with no response to the officers. Suddenly, the front passenger, later identified as Daffany Chapman, jumped out of the truck and acted erratically while cussing and screaming—behavior that Harrington described as "a diversionary tactic." While Zink attempted to control Chapman, Harrington observed continuous "headbobbing" motions inside the truck.

After Officer Zink placed Chapman into the patrol car, Officer Harrington approached appellant, who had remained in the truck. As Harrington walked to the driver's side window, the passenger sitting behind appellant, later identified as Robert Harmon, opened his door. When he did, Harrington smelled a "very distinct" and "strong odor of PCP" coming from within the truck. He also noted that Harmon appeared to be "dazed and confused." And based on his prior experience, Harrington opined that Harmon was intoxicated on PCP.

When Officer Harrington returned his attention to appellant, he opined that appellant was under the influence of PCP. He based his opinion on appellant's slurred speech, strong odor, "dazed and confused" behavior, and inability to follow Harrington's commands. After Harrington helped appellant exit the truck, he handed him over to Officer Zink. He then asked the third occupant, later identified as Jason Warrior, to exit the truck. When he did, Harrington noticed that there was a baby in the back seat.

Officer Harrington then searched the front driver's side of the truck and found, in plain view, an "Ocean Spray" bottle resting toward the right under the driver's seat. He explained that a person would not have been able to shove the bottle to its position in the front seat area from the back seat area because of the wires under the seat. Harrington also noted that the bottle was within appellant's reach and in view from where he had been sitting. Examining the bottle in court, Harrington noted that it contained significantly more liquid on the night of the offense than it did in court. He further explained that the Ocean Spray bottle, when he found it, contained a significant amount of PCP and, based on his training and experience, the amount of PCP in the bottle was for "pure delivery of PCP to someone."

Officer Harrington further testified that he found a smaller "Scope" bottle where Harmon had been sitting. Harrington explained that smaller bottles are used by:

> [T]he street-level dealers. What typically happens is the main dealer
> gives off portions. So, ... it would be—the main portion would be the
> Ocean Spray bottle, it would be poured into a Scope bottle, and then
> the street dealers will go around the complex dealing from within that
> Scope bottle. The Scope bottle doesn't contain as much. So, if we do
> come in contact with them, it won't be as much. It's also more readily
> available for cigarettes to be dipped in them. When you see a Scope
> bottle, you'll see remnants of tobacco cigarette that have been dipped
> in them. Also, while we pursue individuals sometimes the Scope
> bottle is ... easily thrown away and hard to find.

Officer Harrington also found near the Scope bottle, a baby bottle that "smelled of
the remnants of codeine syrup." And he saw, in plain view sticking out from between
the front seats, the butt of a .38 revolver. Harrington also seized from appellant's
pockets approximately $507 in cash, which, although not a large amount, was a
"decent amount of cash to have on a person."

J. Moral, a chemist employed by the City of Houston to analyze evidence to
determine whether it contains a controlled substance, testified that on August 26,
2013, she analyzed the contents of the Ocean Spray bottle and a smaller bottle seized
by Officer Harrington. She explained that PCP is usually dissolved and diluted in
different liquid substances such as acetone or ether, both of which are volatile and
will evaporate over time, which is a normal occurrence. Moral noted that although
liquid containing PCP will lose weight as it evaporates, the PCP remains. She further
explained that the weight of the contents of the Ocean Spray bottle was different at
the time of trial than when it was originally weighed because of the evaporation of
the liquid. And Moral opined that the Ocean Spray bottle contained PCP, weighing
201.57 grams when she tested it. She further opined that the smaller bottle also
contained PCP, weighing 22.63 grams when she tested it.

Moral further clarified that the contents of the Ocean Spray bottle had diminished
because "PCP is usually dissolved in [a] mix with volatile liquids." Thus,
evaporation is "normal." She further explained, "As you can see, this one is more of
a—this Scope plastic bottle has more of a—it prevents less evaporation from the
bottle than this one, but this is something normally you see throughout time."
Although Moral received the evidence on August 12 or August 13 of 2013, and tested
the contents of the bottles on August 26, 2013, she was not alarmed by the ninety
percent reduction of liquid in the Ocean Spray bottle at the time of trial.

*Jones v. State,* No. 14-00385CR, 2015 WL 4591745, at **1-3 (Tex. App. -- Houston [1st Dist.]

2015, no pet.)(not designated for publication).

## IV.    The Issues of Exhaustion and Procedural Default

The scope of federal habeas review is limited by the intertwined doctrines of procedural default and exhaustion. *Bledsue v. Johnson,* 188 F.3d 250, 254 (5th Cir. 1999). Ordinarily, a state prisoner seeking federal habeas relief must first "exhaus[t] the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(1)(A), thereby affording those courts "the first opportunity to address and correct alleged violations of [the] prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731 (1991). The adequate and independent state ground doctrine furthers that objective, for without it, "habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court." *Walker v. Martin,* 131 S. Ct. 1120 (2011) (quoting *Coleman,* 501 U.S. at 732). Exhaustion requires that the prisoner "have fairly presented the substance of his claim to the state courts." *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir. 1997). Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. *O'Sullivan v. Boerckel,* 526 U.S. 838, 846 (1999). "Determining whether a petitioner exhausted his claim in state court is a case- and fact-specific inquiry." *Moore v. Quarterman,* 533 F.3d 338, 341 (5th Cir. 2008) (en banc).

In Texas, a criminal defendant may challenge a conviction by taking the following paths: (1) the petitioner may file a direct appeal followed, if necessary, by a petition for discretionary review in the Texas Court of Criminal Appeals; and/or (2) he may file a petition for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, which is transmitted to the Texas Court of Criminal Appeals once the trial court determines whether findings

are necessary. *See* TEX. CODE CRIM. PROC. art. 11.07, § 3(c); *see also Busby v. Dretke,* 359 F.3d 708, 723 (5th Cir. 2004) ("Habeas petitioners must exhaust state remedies by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings.").

A federal court generally cannot review the merits of a state prisoner's habeas petition if the claims in the petition are procedurally defaulted. *See, e.g., Magwood v. Patterson,* 561 U.S. 320, 340 (2010) ("If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention - whether in trial, appellate, or habeas proceedings, as state law may require - procedural default will bar federal review."). A habeas claim can be procedurally defaulted in either of two ways. *Coleman v. Dretke,* 395 F.3d 216, 220 (5th Cir. 2004), *cert. denied,* 546 U.S. 938 (2005). *See generally O'Sullivan v. Boerckel,* 526 U.S. 838, 850–56 (1999) (Stevens, J., dissenting) (explaining the differences between the two varieties of procedural default); *Bledsue v. Johnson,* 188 F.3d 250, 254 (5th Cir. 1999).

First, "[p]rocedural default . . . occurs when a prisoner fails to exhaust available state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Williams v. Thaler,* 602 F.3d 291, 305 (5th Cir. 2010). When state remedies are rendered unavailable by petitioner's own procedural default, or when "it is obvious that the unexhausted claim would be procedurally barred in state court, we will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review." *Sones v. Hargett,* 61 F.3d 410, 416 (5th Cir. 1995) (quoting *Steel v. Young,* 11 F.3d 1518, 1524 (10th Cir. 1993); *see also Coleman v. Thompson,* 501 U.S. 722, 736 n.1 (1991)) ("[I]f the petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the

claims procedurally barred, . . . [then] there is a procedural default for purposes of federal habeas . . . .").

Second, if the prisoner has presented the claim to the highest available state court but that court has dismissed the claim on a state-law procedural ground instead of deciding it on the merits, the claim has been decided on an independent and adequate state-law ground. *See, e.g., Harris v. Reed,* 489 U.S. 255, 262 (1989). "If a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for dismissal, the prisoner has procedurally defaulted his federal habeas claim." *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir. 1997), *cert. denied,* 523 U.S. 1139 (1998). The state procedural rule must be "both independent of the merits of the federal claim and an adequate basis for the court's decision." *Finley v. Johnson,* 243 F.3d 215, 218 (5th Cir. 2001). A state procedural rule is an adequate basis for the court's decision only if it is "strictly or regularly applied evenhandedly to the vast majority of similar claims." *Amos v. Scott,* 61 F.3d 333, 339 (5th Cir.) (emphasis omitted), *cert. denied,* 516 U.S. 1005 (1995).

## A.    The Claims Dismissed Based on an Independent and Adequate State Ground (Grounds 4 & 5)

In ground 4, Jones challenges the sufficiency of the evidence. Jones asserts that the State never proved who owned the vehicle. He states that the drugs were found on the floor of the vehicle and not linked to any one of the individuals in the vehicle. He maintains that the State never affirmatively linked Jones to the drugs found in the vehicle. Jones asserts that the State never proved that Jones possessed 201.57 grams of PCP. The State never proved all of the elements of the crime.

Respondent contends that this sufficiency of the evidence claim is procedurally barred

because the state habeas court expressly refused to consider it on collateral review. (Docket Entry No. 12, Respondent's Motion for Summary Judgment, pp. 14-15).

The state habeas court found:

"6.    The applicant's challenges to the sufficiency of the evidence are not cognizable in post-conviction habeas proceedings. *Ex parte Christian,* 760 S.W.2d 659, 660 (Tex. Crim. App. 1988)." (Docket Entry No. 13-15, State Court Records, p. 70).

In ground 5, Jones complains that the trial court abused its discretion. (Docket Entry No. 2, Petitioner's Memorandum, pp. 30-37). Though raised in his memorandum in support of the petition, respondent did not address this claim in her motion for summary judgment. The court determines that this claim is procedurally barred.

The state habeas court found:

> 5.    The applicant's allegation of trial court error regarding the admission of evidence seized during the search in the primary case is a "record claim" that should have been raised in the trial court and on direct appeal, and the applicant is now procedurally defaulted from litigating this issue by way of habeas. *Ex Parte Gardner,* 959 S.W.2d 189, 199 (Tex. Crim App. 1996); *Ex Parte Banks,* 769 S.W.2d 539 (Tex. Crim. App. 1989).

(Docket Entry No. 13-15, State Court Records, p. 70).

The Texas rule barring habeas review of claims that were not properly presented on direct appeal is an "adequate state ground capable of barring federal habeas review." *Scheanette v. Quarterman,* 482 F.3d 815, 827 (5th Cir. 2007) (citing *Busby v. Dretke,* 359 F.3d 708, 719 (5th Cir. 2004)). Likewise, it is well established that where a habeas petitioner has failed to raise an insufficiency-of-the-evidence claim on direct appeal, his claim is barred by the doctrine of procedural

default. *See West v. Johnson*, 1385, 1398 n.18 (5th Cir. 1996); *Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994).

Jones's failure to raise his sufficiency of the evidence and trial court error claims on direct appeal constituted a procedural default under state law. *Renz v. Scott,* 28 F.3d 431 (5th Cir. 1994)(citing *Clark v. Texas,* 788 F.2d 309, 310 (5th Cir. 1986)); *Ellis v. Lynaugh,* 883 F.2d 363, 367 (5th Cir. 1989). When a state court denies a prisoner's claims based on an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate (1) cause for the default and prejudice as a result of the alleged violation of federal law, or (2) a resulting fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991). To grant a habeas petition due to a manifest miscarriage of justice, the petitioner "must show that a constitutional violation prevented him from showing his actual innocence" or "resulted in the conviction." *Ellis v. Collins,* 956 F.2d 76, 80 (5th Cir.), *cert. denied,* 503 U.S. 915 (1992).

To overcome his acknowledged procedural default of these claims, Jones must either "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In order to show adequate cause for the default, Jones must demonstrate that some objective, external factor prevented his compliance with the state procedural rule. *Meanes v. Johnson*, 138 F.3d 1007, 1011 (5th Cir. 1998) (quoting *Murray v. Carrier*, 477 U.S. 478 (1986)). Jones has failed to meet his burden to show cause for his procedural default. A federal court may hear the procedurally defaulted claims of a state prisoner if the failure to hear those claims would constitute a "miscarriage of justice" because the prisoner is actually innocent. *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

Under the procedural default doctrine, this federal court is precluded from granting habeas relief where the last state court to consider the claims raised by Jones expressly and unambiguously based its denial of relief on an independent and adequate state law procedural ground. *Coleman v. Thompson,* 501 U.S. 722, 729-30 (1991); *Hughes v. Johnson,* 191 F.3d 607, 614 (5th Cir. 1999). Here, a state court explicitly relied on a procedural bar. Jones may not obtain federal habeas relief absent a showing of cause for the default and actual prejudice. *Coleman,* 501 U.S. at 750. Even if Jones failed to satisfy the cause and prejudice standard, he may still be entitled to habeas corpus relief if he can show that the imposition of the procedural bar would constitute a miscarriage of justice - in other words, that he was actually innocent of the crime. *Sawyer v. Whitley,* 505 U.S. 333, 339-40 (1992); *Finley v. Johnson,* 243 F.3d 215, 220 (5th Cir. 2001). Jones failed to satisfy the cause and prejudice standard or show that a miscarriage of justice would occur if the claim is not considered.

Jones's claims based on sufficiency of the evidence and trial court errors are procedurally-barred.

### B.     The Unexhausted Claim
   (Ground 3)

Jones complains that his right to equal protection of the law was violated. Jones did not present this claim on direct appeal or in a petition for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure. This claim is procedurally defaulted because Jones failed to exhaust available state remedies, and the court to which Jones would be required to present his claim in order to meet the exhaustion requirement would now find the claim procedurally barred.

To overcome the procedural bar on nonexhaustion, Jones must "demonstrate cause for the

default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Wainwright v. Sykes,* 433 U.S. 72, 87-91 (1977); *Ries v. Quarterman,* 522 F.3d 517, 523-24 (5th Cir. 2008). Jones offers no arguments that would excuse the procedural default. Jones does not dispute that this claim is unexhausted. Jones's equal protection claim is dismissed because it is procedurally-barred.

## V. The Claim of Ineffective Assistance of Trial Counsel (Ground 2)

To establish an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that he was actually prejudiced as a result. *Strickland v. Washington,* 466 U.S. 668, 68 (1984). Whether counsel's performance was deficient is determined by an objective standard of reasonableness. *Kitchens v. Johnson,* 190 F.3d 698, 701 (5th Cir. 1999). "[S]crutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and to have made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690-91; *see also United States v. Jones,* 287 F.3d 325, 331 (5th Cir.)("Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed."), *cert. denied,* 537 U.S. 1018 (2002); *Lockett v. Anderson,* 230 F.3d 695, 714 (5th Cir. 2000) (*Strickland* requires deference to counsel's "informed strategic choices"). "So long as counsel made an adequate investigation, any strategic decisions made as a result of that

investigation fall within the wide range of objectively reasonable professional assistance." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002) (internal quotation marks and citation omitted).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Jones*, 287 F.3d at 331. To overcome the deference given to informed strategic decisions, a petitioner must show that his counsel "blundered through trial, attempted to put on an unsupported defense, abandoned a trial tactic, failed to pursue a reasonable alternative course, or surrendered his client." *Id.*; *see also Moore v. Johnson*, 194 F.3d 586, 615 (5th Cir. 1999) ("*Strickland* does not require deference to those decisions of counsel that, viewed in light of the facts known at the time of the purported decision, do not serve any conceivable strategic purpose.").

Even if a petitioner establishes that his counsel's performance was deficient, he must also establish that "prejudice caused by the deficiency is such that there is a reasonable probability that the result of the proceedings would have been different." *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997). A petitioner must show that the prejudice made the trial outcome "fundamentally unfair or unreliable." *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364 (1993)).

The state habeas court found that:

1.   The applicant fails to demonstrate that trial counsel's representation fell below an objective standard of reasonableness or that with a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Mitchell v. State,* 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Narvaiz v. State,* 840 S.W.2d 415, 434 (Tex. Crim. App. 1992) (citing *Strickland v. Washington,* 466 U.S. 668, 688 (1984)).

2. The applicant fails to demonstrate that counsel provided representation that "amounted to incompetence under 'prevailing professional norms.' *Harrington v. Richter*, 131S. Ct. 770 (2011) (citing *Strickland v. Washington*, 466 U.S. at 690).

3. The applicant fails to allege sufficient facts which, if true, would entitle him to relief on his claims that the trial counsel failed to challenge witness testimony. *Ex parte Empey*, 757 S.W.2d 771, 775 (Tex. Crim. App. 1988); *Ex parte Young*, 418 S.W.2d 824 (Tex. Crim. App. 1967); *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002).

4. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of trial counsel. *Harrington v. Richter*, 131 S. Ct. 770 (2011) (citing *Strickland v. Washington*, 466 U.S. at 690).

(Docket Entry No. 13-15, p. 69).

Under the AEDPA, this court must give proper deference to the state court's determination that trial counsel rendered effective assistance. *See Ladd v. Cockrell*, 311 F.3d 349, 351 (5th Cir. 2002). Because the state court properly identified *Strickland* as the governing legal principle, the "unreasonable application" prong of section 2254(d)(1) provides the standard that governs this court's review of the state court's decision on Jones's ineffective counsel claims. *Bell v. Cone*, 535 U.S. 685, 694-695 (2002). This court must determine whether the state court's application of *Strickland* was objectively unreasonable. *Id.*; *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002) (en banc), *cert. denied*, 537 U.S. 1104 (2003). Under section 2254(d)(1), "[w]e have no authority to grant habeas corpus relief simply because we conclude, in our independent judgment, that a state supreme court's application of *Strickland* is erroneous or incorrect." *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (quoting *Neal*, 286 F.3d at 236). "The federal-habeas scheme leaves primary responsibility with the state courts for these judgments, and authorizes federal-court intervention only when a state court decision is objectively unreasonable." *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002).

## A.    Failure to Investigate

Jones complains that counsel failed to hire an investigator. Jones complains that counsel failed to investigate the tint on the vehicle's windows. Jones claims counsel could have shown that the officers could not have seen Jones through the heavily tinted windows.

Defense counsel has the obligation to conduct a "reasonably substantial, independent investigation." *Neal v. Puckett*, 239 F.3d 683, 688 (5th Cir. 2001) (quoting *Baldwin v. Maggio*, 704 F.2d 1325, 1332–33 (5th Cir. 1983)). The Supreme Court has explained the governing standard:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690–91; *see also Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005). There are no "strict rules" for counsel's conduct beyond "the general requirement of reasonableness." *Pinholster*, 131 S. Ct. at 1406–07. "An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense." *Richter*, 131 S. Ct. at 789–90 (citing *Strickland*, 466 U.S. at 691). Trial counsel is "entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Id.* at 789. Moreover, "a defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."

O:\RAO\VDG\2016\16-3761.d01.wpd

*Druery v. Thaler,* 647 F.3d 535, 541 (5th Cir. 2011), *cert. denied,* —— U.S. ——, 132 S. Ct. 1550

(2012) (quoting *Nelson v. Hargett,* 989 F.2d 847, 850 (5th Cir. 1993)).

Upon a reasonable investigation, defense counsel also has an obligation to make reasonable

strategic decisions regarding which witnesses and evidence he will present. *Cf. Strickland,* 466 U.S.

at 690–91. "[T]he failure to present a particular line of argument or evidence is presumed to have

been the result of strategic choice." *Taylor v. Maggio,* 727 F.2d 341, 347 (5th Cir. 1984). As we

have held, "a tactical decision not to pursue and present potential mitigating evidence on the grounds

that it is double-edged in nature is objectively reasonable, and therefore does not amount to deficient

performance." *Rector v. Johnson,* 120 F.3d 551, 564 (5th Cir. 1997).

The state habeas court found:

> 6.    The Court finds that on January 6, 2014, the trial court granted trial counsel's motion to hire an investigator. *See State's Exhibit A, "Ex parte Motion for Authorization to Expend Funds for Investigator" in cause no. 1397773.*
>
> . . .
>
> 13.    The Court finds that Houston Police Officer C. Harrington testified that he observed the vehicle that the applicant was driving fail to come to a complete stop at a stop sign. (II R.R. at 35).
>
> 14.    The Court finds that Officer Harrington also testified that he observed the occupants of the vehicle making furtive movements prior to the stop. (II R.R. at 37).
>
> 15.    The Court finds that Officer Harrington testified that he detected a strong odor of PCP coming from the vehicle when the door was opened. (II R.R. at 52).
>
> 16.    The Court finds that during cross-examination trial counsel questioned Officer Harrington regarding his ability to see through the dark tint of the vehicle. (II R.R. 80-81).
>
> 17.    The Court finds that during cross-examination trial counsel challenged Officer Harrington's characterization of the applicant's speech as slurred,

noting that the characterization was not included in offense report. (II R.R. at 100).

18. The Court finds that the Court of Appeals held that the evidence in the primary case was legally sufficient to support the trial court's implied finding that appellant possessed the PCP with the intent to deliver it, and that the PCP weighed greater than 200 grams, but less than 400 grams, when it was seized. *Jones v. State,* No. 01-14-00385-CR, 2015 WL 4591745 (Tex. App. Houston [1st Dist.] 2015, no pet.).

(Docket Entry No. 13-15, pp. 68-60).

The state habeas court concluded:

"4. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of trial counsel. *Harrington v. Richter,* 131 S. Ct. 770 (2011) (citing *Strickland v. Washington,* 466 U.S. at 690)." (Docket Entry No. 13-15, p. 69).

At trial, the arresting officers testified that they witnessed Jones's vehicle leave an area known for distribution of PCP. The officers observed Jones and the other occupants of the vehicle making furtive gestures, suggesting they were trying to hide something under the seats. Officer Harrington, one of the arresting officers, detected an odor of PCP in the vehicle and noted that Jones appeared to be under the influence of PCP. The officers recovered an Ocean Spray bottle containing PCP from the vehicle. Jones has failed to allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. Jones has failed to show that counsel's actions amounted to deficient performance. Nor has Jones shown any prejudice.

Jones is not entitled to habeas relief on this claim.

**B.     The Failure to Call Witnesses**

Jones argues that counsel failed to call a chemist who could have refuted the testimony of the State's chemist. Jones asserts that the State's chemist, J. Moral, lied about the amount of PCP

that was recovered. Though Jones was charged with possessing 201.57 grams of PCP, J. Moral testified that she tested a substance weighing 1.57 grams. She explained that PCP is often diluted in acetone or ether, and this tends to evaporate. Jones complains that Moral failed to identify the dilutant used in the substance recovered from Jones's vehicle. Jones argues that counsel should have hired a chemist who could have established that Moral was lying.

Second-guessing is not the test for ineffective assistance of counsel. *King v. Lynaugh*, 868 F.2d 1400, 1405 (5th Cir. 1989). In *Strickland*, 466 U.S. at 691, the Supreme Court explained that:

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

*Id.* at 691.

The state habeas court found:

7.    The Court finds that Houston Forensics Science Center Chemist J. Moral testified that the weight of the phencyclidine (PCP) recovered in the primary case changed significantly between the time of her analysis and trial. (II R.R. at 9).

8.    The Court finds that witness Moral testified that acetone and ether are frequently used to dilute PCP and will evaporate over time. (II R.R. at 9-10).

9.    The Court finds that witness Moral testified that at the time of testing the substance contained PCP and weighed 201.57 grams. (II R.R. at 11).

10.   The Court finds that during cross-examination trial counsel elicited testimony from Moral that roughly ninety (90) percent of the substance had evaporated between the time of testing and trial. (II R.R. at 15).

11.   The Court finds that during cross-examination Moral agreed that a smaller bottle of PCP collected during the investigation appeared not to have evaporated at all. (II R.R. at 16).

12. The Court finds that during cross-examination Moral acknowledged that no analysis for purity was conducted in either sample of PCP. (II R.R. at 19-20).

(Docket Entry No. 13-15, p. 68).

The state habeas court concluded:

"4. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of trial counsel. *Harrington v. Richter*, 131 S. Ct. 770 (2011) (citing *Strickland v. Washington*, 466 U.S. at 690)." (Docket Entry No. 13-15, p. 69). The Court of Criminal Appeals expressly based its denial of habeas relief on this finding. These credibility determinations are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1); *Moore v. Johnson*, 194 F.3d 586, 604 (5th Cir. 1999) (op. on reh'g). Jones has not produced clear and convincing evidence to rebut this finding.

Decisions on the presentation of evidence and witnesses are essentially strategic. Counsel is entitled to a presumption that his performance was adequate. Complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy. *Wilkerson v. Cain*, 233 F.3d 886, 892-93 (5th Cir. 2000)(citing *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983)). There is no basis other than speculation to support Jones's argument that the outcome of the trial would have been different had counsel offered the testimony of another chemist. Jones has not explained why the jury would have reached a different result.

The state court's decision as to the effective assistance of counsel reasonably applied the law to the facts, consistent with clearly established federal law. Jones has not shown a basis for the relief he seeks. 28 U.S.C. § 2254(d)(1).

## VI. The Claim Based on a Violation of the Fourth Amendment (Ground 1)

Jones argues that Officer Harrington lacked probable cause to stop and arrest Jones. Jones asserts Officer Harrington falsely claimed that Jones had evaded arrest and that Jones was under the influence of PCP. Jones argues that he never consented to the search of his vehicle. (Docket Entry No. 14, Petitioner's Response, p. 3). Jones asserts that Officer Harrington did not have a search warrant, and he did not call a K-9 unit to the scene.

Jones's illegal search and seizure claim fails. Jones is precluded from relitigating his Fourth Amendment claim in this federal habeas proceeding, where, as here, the State provided an opportunity for full and fair litigation of the claim in state court. When such an opportunity is provided, a state prisoner may not secure federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial. *Stone v. Powell,* 428 U.S. 465, 494 (1976). A federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review. *Id.* at 495 n.37. The decision in *Stone* does not mean that the federal court lacks jurisdiction over such a claim, but only that the application of the rule is limited to cases in which there has been both such a showing and a Fourth Amendment violation. *Id.; see also Davis v. Blackburn,* 803 F.2d 1371, 1372 (5th Cir. 1986).

Under *Stone,* search and seizure claims are precluded unless the petitioner presents sufficient "allegations that the processes provided by the state to fully and fairly litigate Fourth Amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of Fourth Amendment claims on their merits." *Williams v. Brown,* 609 F.2d 216, 220 (5th Cir. 1980).

If the state court record reflects that the petitioner's opportunity to challenge the introduction of evidence was "not circumscribed," a federal habeas court will not "scrutinize a state court's application of fourth amendment principles." *Billiot v. Maggio,* 694 F.2d 98, 100 (5th Cir. 1982). Texas law provided Jones a full opportunity to litigate his Fourth Amendment claims through pretrial motions to suppress evidence. TEX. CODE CRIM. PROC. art. 28.01, § 1(6). *See also Self v. Collins,* 973 F.2d 1198, 1208 (5th Cir. 1992)(finding claim barred by *Stone* because the petitioner did not challenge the legality of his arrest, the state had no reason to prove otherwise, and the Texas state courts had no opportunity to consider the issue), *cert. denied,* 507 U.S. 996 (1993).

Jones has not shown that the state court's process of litigating Fourth Amendment claims is routinely or systematically applied in such a way as to prevent actual litigation of such claims, or that it was so applied in his case. Jones's Fourth Amendment challenge to the seizure of drugs from his vehicle is not cognizable on habeas review because the state court provided an opportunity for "full and fair" litigation of that challenge. *Stone,* 428 U.S. at 494 (1976). The bar of *Stone v. Powell* applies despite any state trial court error in deciding the merits of Jones's Fourth Amendment claim. *Andrews v. Collins,* 21 F.3d 612, 631-32 (5th Cir. 1994); *Christian v. McKaskle,* 731 F.2d 1196, 1199 (5th Cir. 1984).

Jones is not entitled to the relief he seeks.

## VII. Conclusion

Respondent's Motion for Summary Judgment, (Docket Entry No. 12), is GRANTED. Jones's petition for a writ of habeas corpus is DENIED. This case is DISMISSED. Any remaining pending motions are DENIED as moot.

The Supreme Court has stated that the showing necessary for a Certificate of Appealability is a substantial showing of the denial of a constitutional right. *Hernandez v. Johnson,* 213 F.3d 243, 248 (5th Cir. 2000) (citing *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000)). Under that standard, an applicant makes a substantial showing when he demonstrates that his application involves issues that are debatable among jurists of reason, that another court could resolve the issues differently, or that the issues are suitable enough to deserve encouragement to proceed further. *See Clark v. Johnson,* 202 F.3d 760, 763 (5th Cir. 2000). Where a district court has rejected a prisoner's constitutional claims on the merits, the applicant must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack,* 529 U.S. 484.

This court denies Jones's petition after careful consideration of the merits of his constitutional claims. This court denies a COA because Jones has not made the necessary showing for issuance. Accordingly, a certificate of appealability is DENIED.

SIGNED at Houston, Texas, on _____Dec. 19_____, 2017.


_____
VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE

O:\RAO\VDG\2016\16-3761.d01.wpd